James E. SWANN et al., Plaintiffs,

v.

The CHARLOTTE–MECKLENBURG BOARD OF EDUCATION et al., Defendants.

Civ. No. 1974.

United States District Court,
W. D. North Carolina,
Charlotte Division.

July 11, 1975.

See also, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554, 318 F.Supp. 786, 328 F.

Supp. 1346, 334 F.Supp. 623, 362 F. Supp. 1223, 379 F.Supp. 1102, 66 F.R.D. 483, 489 F.2d 966, 501 F.2d 383.

Julius L. Chambers, Chambers, Stein, Ferguson & Becton, Charlotte, N. C., for plaintiffs.

William W. Sturges, Weinstein, Sturges, Odom, Bigger & Jonas, Charlotte, N. C., for defendants.

## FINAL ORDER

## (SWANN SONG)

McMILLAN, District Judge.

On July 10, 1974, defendants filed a report covering certain changes in the proposed 1974–75 pupil assignment plan, and requested the court to dismiss the suit. On July 30, 1974, the court entered an order approving the revised plan under specified conditions, and expressing appreciation to the Board, the Citizens Advisory Group and the school staff people and others who had worked to make it possible. The order closed with the comment that, after May 1, 1975,

". . . assuming and believing that no action by the court will then be required, I look forward with pleasure to closing the suit as an active matter of litigation . . ."

Since early 1974, the case has been quiet. No new or old issues have been raised by the litigants or decided by the court. The new Board has taken a more positive attitude toward desegregation and has at last openly supported affirmative action to cope with recurrent racial problems in pupil assignment. Though continuing problems remain, as hangovers from previous active discrimination, defendants are actively and intelligently addressing these problems without court intervention. It is time, in the tenor of the previous order, to be "closing the suit as an active matter of litigation . . ."

Dismissal is neither usual nor correct in a case like this where continuing injunctive or mandatory relief has been required. Facts and issues once decided on their merits ought, generally, to remain decided. This case contains many orders of continuing effect, and could be re-opened upon proper showing that those orders are not being observed. The court does not anticipate any action by the defendants to justify a re-opening; does not anticipate any motion by plaintiffs to re-open; and does not intend lightly to grant any such motion if made. This order intends therefore to close the file; to leave the constitutional operation of the schools to the Board, which assumed that burden after the latest election; and to express again a deep appreciation to the Board members, community leaders, school administrators, teachers and parents who have made it possible to end this litigation.

The duty to comply with existing court orders respecting pupil assignment of course remains. So, also, does the duty to comply with constitutional and other legal requirements respecting other forms of racial discrimination.

Ghosts continue to walk. For example, some perennial critics here and elsewhere are interpreting Professor James Coleman's latest dicta in support of the

notion that courts should abandon their duty to apply the law in urban school segregation cases. Coleman is worried about "white flight," they say; school desegregation depends on Coleman; therefore the courts should bow out; *"cessante ratione, cessat ipsa lex,"* they say.

The local School Board members have not followed that siren. Perhaps it is because they realize that this court's orders, starting with the first order of April 23, 1969, are based, not upon the theories of statisticians, but upon the Constitution of the United States, and because they recall and are prepared to follow the law of this case which, as to Coleman, is contained in the order of August 3, 1970 (318 F.Supp. 786, 794, W.D.N.C.1970) as follows:

> *"The duty to desegregate schools does not depend upon the Coleman report, nor on any particular racial proportion of students* [emphasis from original].—The essence of the *Brown* decision is that segregation implies inferiority, reduces incentive, reduces morale, reduces opportunity for association and breadth of experience, and that the segregated education itself is inherently unequal. The tests which show the poor performance of segregated children are evidence showing one result of segregation. *Segregation would not become lawful, however, if all children scored equally on the tests."* (Emphasis added.)

I do not anticipate a revival, in the Charlotte-Mecklenburg school system, of this and other questions which have already been exhaustively (and expensively) litigated and definitively answered.

With grateful appreciation to all who have made possible this court's graduation from *Swann,* it is therefore

Ordered:

1. That this cause be removed from the active docket.

2. That the file be closed.